UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| John Earl Haggard, Jr,<br>    Plaintiff, | Case No. |
| v. | Hon. _____ |
| Cody Wheat and William Church,<br>    Defendants. | |

_____/

Mary Beth Kur (P44424)
Attorney for Plaintiff
455 Bay Street, Suite B
Petoskey, MI 49770
231-348-3200

J. Nicholas Bostic (P40653)
Co-counsel for Plaintiff
909 N. Washington Avenue
Lansing, MI 48906
(517) 706-0132

_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff, for his complaint, states:

1. This is a civil action seeking money damages for violations of the United States Constitution and federal statutes under 42 U.S.C. §1983.

2. Plaintiff was at all times relevant to this complaint, a competent adult and resident of Charlevoix County in the State of Michigan.

3. Defendant Cody Wheat is, and at all times relevant to this complaint was, a competent adult, his county of residence is unknown and he conducts his business as a Charlevoix County Deputy Sheriff in Charlevoix County in the Western District of Michigan.

1

4. Defendant William Church is, and at all times relevant to this complaint was, a competent adult, his county of residence is unknown and he conducts his business as a Charlevoix County Deputy Sheriff in Charlevoix County in the Western District of Michigan.

5. At all times relevant to this complaint, all Defendants were acting under color of state law.

6. This cause of action arose in Charlevoix County in the State of Michigan and the Western District of Michigan.

7. This Court has jurisdiction pursuant to 28 USC §§1331 and 1343(a)(4).

## GENERAL ALLEGATIONS

8. Paragraphs 1 through 7 above are incorporated herein by reference.

9. On May 7, 2022, Plaintiff went to work at approximately 6:30 a.m. and worked until approximately 5:30 p.m.

10. Plaintiff's residence in 2022 was located on Beaver Island, Charlevoix County, Michigan at an assigned address of 38391 Freesoil Avenue.

11. Also residing at Plaintiff's dwelling was the mother of his children, Jessica Walker, and their two minor children, SW and GW.

12. On May 7, 2022, Ms. Walker's mother was also staying in Plaintiff's home as a guest.

13. As of May 7, 2022, Plaintiff and Ms. Walker were both under a family court order granting joint legal custody of the minor children to them both and granting primary physical custody of the minor children to Plaintiff with reasonable parenting time to Ms. Walker as agreed upon between the parties.

14. The family court order was in place because of Ms. Walker's drug abuse, alcohol abuse, and inability to maintain her sobriety.

2

15. As of May 7, 2022, Ms. Walker had an outstanding arrest warrant for her from the 90th District Court for a case alleging two counts of Child Abuse Fourth Degree with the minor children as victims.

16. On May 7, 2022, Plaintiff left his employment and went to a third-party's residence to work on plumbing and heating and did not finish until approximately 11:00 p.m. after which he went home and went to bed.

17. On May 7, 2022, Ms. Walker was allowed to stay at Plaintiff's home as a guest and she used a bedroom to herself.

18. On May 7, 2022, the minor children slept in the same room as Plaintiff.

19. On May 7, 2022, Ms. Walker called 911 which included Ms. Walker making suicidal comments and claiming that Plaintiff had kicked her out.

20. Deputy Callian responded to the call that evidence at Plaintiff's residence and reported there were no problems at the residence and Ms. Walker was fine.

21. On May 7, 2022, Ms. Walker called a domestic violence shelter and falsely reported that she had been raped to enable air transportation to Alaska.

22. On May 9, 2022, Ms. Walker left Beaver Island, travelled to Cherry Capitol Airport and then flew to Alaska with both minor children in violation of the family court order and her conditional bond for the criminal charge.

23. On May 10, 2022, Plaintiff reported his children as missing and filed a police report for parental kidnapping regarding Ms. Walker.

24. On May 11, 2022, Ms. Walker falsely reported to the Alaska State Police that Plaintiff had raped her on May 7, 2022.

3

25. Defendant Wheat was a detective with the Charlevoix County Sheriff's Office and was assigned to follow up the parental kidnapping complaint.

26. In the course of that investigation, Defendant Wheat spoke to Ms. Walker who repeated the false allegation of rape to him and falsely reported that Plaintiff had child sexually abusive material on his cellular telephone.

## COUNT 1 – FOURTH AMENDMENTN
(42 U.S.C. §1983 – unlawful search and seizure for Plaintiff's phone and secure digital card)

27. Paragraphs 1 through 26 above are incorporated herein by reference.

28. On May 12, 2022, Defendant Wheat obtained a search warrant for the person of Plaintiff based upon Defendant Wheat's own sworn affidavit.

29. The search warrant identified the "person, place, or thing to be searched" as: "The person of John Earl Haggard JR (DOB 07-10-1973), or *any place he is located during the execution of this search warrant*, who resides at 38391 Freesoil Ave, Beaver Island. MI 49782" (emphasis added).

30. The affidavit fails to identify with particularity the place to be searched.

31. The affidavit is a general warrant as it would allow a search of a vehicle, school, doctor's office, third-party dwelling, business, or any other facility where Plaintiff might be when the police meet with him.

32. The affidavit is also a general warrant because it would allow the police to invite Plaintiff to a particular place or wait until he arrived at a particular place to allow them to search that place.

33. The affidavit for the search warrant for Plaintiff's person was directed at seizing the following property: "any and all cellular phones, electronic devices, computers, laptop

4

computers, electronic storage devices, recording devices, and any other devices capable of storing Child Sexually Abusive Material belonging to John Earl Haggard, JR."

34. The affidavit for the search warrant for Plaintiff's person was directed at seizing the following additional property: "Any and all computer hard drives and or computers. Any and all resource discs, manuals, computer discs, materials needed to operate computer and or equipment, including any codes or passwords. Any and all CDS, DVDS, discs, or data storing devices or equipment."

35. The affidavit contained no factual information alleging or inferring that Plaintiff had ever used or even owned any item listed in Paragraphs 33 and 34 above except for a cellular phone.

36. The affidavit was overbroad and a general warrant as to any device other than a cellular phone.

37. The affidavit identified the property to be searched for and seized regarding cellular phones as:

> A forensic examination of the above mentioned cellphone will be conducted by any means possible, [. . . ], to locate any and all contents, including but not limited to incoming or outgoing text messages and voice mail messages, emails, photographic images, picture files, or video files, located in the memory of the cellular phones, including the content of the messages, the identity of the sender or recipient of the messages or images, and the telephone number to which the messages or images were sent or from whence the messages or images originated. Also any GPS data located within the pictures or video files that maybe located on the cellular phone. Authorization to search the contents of the cellphone equipment using such technology as necessary, and with specialized personnel as may be needed off-site, for the retrieval of evidence of crimes specified herein.

38. The affidavit contained no factual information alleging or inferring probable cause to search for text messages, voice mail messages, or emails on the phone.

5

39. The affidavit was overbroad and a general warrant as to any type of electronic or digital file other than video files.

40. The affidavit did not contain any factual information alleging or inferring a date that the informant allegedly made the observations of child sexually abusive material.

41. The affidavit contained the following information concerning the location of the cellular phone:

> Walker reported that Haggard now has a phone that he carries around that is not the phone in question. Walker stated that a while ago, she had been looking for her laptop and found it hidden under the mattress of the bed. This made Walker question what else Haggard was hiding. Walker checked behind the padding in the gun case and located a black cellular phone that she had purchased as part of a cellular plan. This was the phone that Haggard had been using. Walker opened the phone in the presence of Jacob Kobbel and observed videos and pornography of young girls being "raped". The girls were all Japanese or of Asian descent. Walker described the girls as being "prepubescent" Walker stated there were searches on the internet on the phone for young Japanese girls being raped. Walker used her phone to document some of the information discovered on the phone. Walker stated that she tried to give the phone to Deputy Olsen but something always came up and Olsen was not able to pick up the phone. Haggard was able to get the phone back and Walker does not know where the phone is located at this time.

42. The affidavit failed to establish probable cause that Plaintiff was still in possession of the cellular phone described in the affidavit.

43. The affidavit failed to provide sufficient information to establish probable cause of the age of persons depicted in the alleged videos and failed to establish probable cause for the offense of child sexually abuse material.

44. The affidavit fails to establish that the informant's information was corroborated by actually producing the documentation she claimed to have made of the contents of the phone in question.

45. The affidavit fails to establish Ms. Walker's ability to make age determinations in a cross-cultural context.

46. The affidavit fails to establish Ms. Walker's ability to make age determinations of persons depicted in videos including as to whether they were clothed, partially clothed, or unclothed.

47. The affidavit fails to include any factual information to support Ms. Walker's conclusions as to the developmental stage of the persons depicted in the images.

48. The affidavit contained information establishing Ms. Walker's motivation to fabricate but failed to include efforts by the affiant to corroborate her claims.

49. Defendant Wheat was aware that a call from Plaintiff's residence had been made on May 7, 2022 further establishing the unreliability of Ms. Walker and omitted this information from the affidavit.

50. The search warrant itself contained no reference to the affidavit which was not attached to the executed warrant thereby failing to adopt any limitations that might have existed in the affidavit itself.

51. The affidavit failed to include factual information to establish the training, experience, or basis for Defendant Wheat's conclusions included in the affidavit.

52. The warrant obtained by the affidavit was invalid on its face and no reasonably trained or objective police officer would have relied on it to conduct a search or seizure of a phone.

53. The seizure of Plaintiff's cellular phone and blue SD (secure digital) card on May 12, 2022 by Defendant Wheat was done without a valid warrant.

54. The seizure of Plaintiff's cellular phone and blue SD card on May 12, 2022 by Defendant Wheat was done without a valid exception to the warrant requirement.

55. The seizure of Plaintiff's cellular phone and blue SD card on May 12, 2022 by Defendant Wheat is presumed to be in violation of the Fourth Amendment to the United States Constitution.

56. On May 12, 2022, it was clearly established that a government actor could not seize personal property without a valid warrant or an exception to the warrant requirement of the Fourth Amendment.

57. The conduct of Defendant Wheat was a direct and proximate cause of the constitutional violation on May 12, 2022.

58. Plaintiff was damaged as a result of Defendant Wheat's unlawful conduct in that Plaintiff lost the protection of his personal privacy and the protection of the Fourth Amendment to the United States Constitution as well as anxiety, humiliation, excessive stress, worry, and a feeling of the loss of security of his property.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $25,000.00 against Defendant Wheat.

## COUNT 2 – FOURTH AMENDMENT
(42 U.S.C. §1983 – unlawful search of and seizure at Plaintiff's dwelling)

59. Paragraphs 1 through 58 above are incorporated herein by reference.

60. On May 12, 2022, Defendant Wheat obtained a search warrant for 38391 Freesoil Avenue, Beaver Island, Michigan describing it as a single wide trailer and a detached pole barn based upon Defendant Wheat's own sworn affidavit.

61. The person, place, or thing to be searched for was described as "The residence, all outbuildings, all vehicles, and property at 38391 Frcesoil Ave, Beaver Island, MI 49782."

62. The affidavit failed to contain any factual information alleging or inferring that the evidence to be searched for would be located in an outbuilding or in vehicles.

63. The affidavit was overbroad and a general warrant as to any location other than the dwelling.

64. The affidavit for the search warrant for 38391 Freesoil Avenue was directed at seizing property identical to the allegations in Paragraphs 33, 34, and 37 above.

65. The affidavit contained the same defects and omissions as described in Paragraphs 35, 36, and 38 through 51 above.

66. The affidavit failed to establish that 38391 Freesoil Avenue was used by, owned by, or under the control of Plaintiff.

67. The affidavit failed to include a factual allegation that "John Earl Haggard Jr's bedroom" was located at 38391 Freesoil Ave.

68. The warrant obtained by the affidavit was invalid on its face and no reasonably trained or objective police officer would have relied on it to conduct a search of 38391 Freesoil Avenue.

69. The search of Plaintiff's dwelling on May 12, 2022 by Defendant Wheat was done without a valid warrant.

70. The seizure of Plaintiff's personal property from his dwelling on May 12, 2022 by Defendant Wheat was done without a valid exception to the warrant requirement.

71. The search of Plaintiff's dwelling and seizure of Plaintiff's property on May 12, 2022 by Defendant Wheat is presumed to be in violation of the Fourth Amendment to the United States Constitution.

72. On May 12, 2022, it was clearly established that a government actor could not search a dwelling or seize personal property without a valid warrant or an exception to the warrant requirement of the Fourth Amendment.

73. The conduct of Defendant Wheat was a direct and proximate cause of the constitutional violation on May 12, 2022.

74. Plaintiff was damaged as a result of Defendant Wheat's unlawful conduct in that Plaintiff lost the protection of his personal privacy and the protection of the Fourth Amendment to the

United States Constitution as well as anxiety, humiliation, excessive stress, worry, and a feeling of the loss of security of his property.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $25,000.00 against Defendant Wheat.

COUNT 3 – FOURTH AMENDMENT
(42 U.S.C. §1983 – unlawful seizure of Plaintiff's social media account)

75. Paragraphs 1 through 74 above are incorporated herein by reference.

76. On May 18, 2022, Defendant Wheat obtained a search warrant for Plaintiff's social media account with Meta, Inc. (aka Facebook) based upon Defendant Wheat's own sworn affidavit.

77. The affidavit in support of the social media account search warrant suffered from the same defects and omissions as described in Paragraphs 35, 36, and 38 through 51 above.

78. During the interview of Ms. Walker by Defendant Wheat on May 12, 2022, Ms. Walker told Defendant Wheat that she viewed videos of "young girls being raped" on a cell phone she claimed was used by Plaintiff.

79. Ms. Walker told Defendant Wheat that she viewed this information in the presence of Jacob Kovel.

80. On May 13, 2022, Defendant Wheat interviewed Jacob Kovel and Mr. Kovel told Defendant Wheat that he was present when Ms. Walker displayed a phone to him.

81. Mr. Kovel also told Defendant Wheat that the viewing occurred six months prior and he did not recall seeing any images of child pornography on the phone but he did remember seeing images of Plaintiff on the phone.

82. Defendant Wheat deliberately omitted the information in Paragraphs 80 and 81 above from the affidavit for the search warrant of the social media account.

83. On May 18, 2022, Defendant Wheat submitted the search warrant affidavit and proposed search warrant to a Probate Court Judge who authorized the search warrant.

84. Unless authorized by a local administrative order, State Court Administrative Office assignment or other authorization by a chief judge, a Probate Judge does not have authority to issue search warrants in the state of Michigan.

85. No local administrative order, State Court Administrator Office assignment or other authorization existed to grant the Probate Judge authority to issue search warrants.

86. The search warrant utilized on May 18, 2022 to obtain the social media records was void.

87. The warrant obtained by the affidavit was invalid on its face and no reasonably trained or objective police officer would have relied on it to conduct a seizure of Plaintiff's social media account.

88. The seizure of Plaintiff's social media account on or about June 6, 2022 by Defendant Wheat was done without a valid warrant.

89. The seizure of Plaintiff's social media information by Defendant Wheat was done without a valid exception to the warrant requirement.

90. The seizure of Plaintiff's social media account by Defendant Wheat is presumed to be in violation of the Fourth Amendment to the United States Constitution.

91. On May 18, 2022, it was clearly established that a government actor could not seize data held by an electronic communications provider without a valid warrant or an exception to the warrant requirement of the Fourth Amendment.

92. The conduct of Defendant Wheat was a direct and proximate cause of the constitutional violation on or about June 6, 2022.

93. Plaintiff was damaged as a result of Defendant Wheat's unlawful conduct in that Plaintiff lost the protection of his personal privacy and the protection of the Fourth Amendment to the United States Constitution as well as anxiety, humiliation, excessive stress, worry, and a feeling of the loss of security of his property.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $25,000.00 against Defendant Wheat.

COUNT 4 – FOURTH AMENDMENT
(42 U.S.C. §1983 – unlawful search of Plaintiff's cellular phone and other devices)

94. Paragraphs 1 through 93 above are incorporated herein by reference.

95. On May 19, 2022, Defendant William Church utilized software applications to extract data from eight different chat messaging platforms, applications installed on Plaintiff's phone, instant messages, voicemails, images, and videos on Plaintiff's phone.

96. July 12, 2022 and October 18, 2022, Defendant Wheat searched the extraction from Plaintiff's seized cellular telephone.

97. Defendant Wheat did not obtain another warrant for the search of the data from the cellular phone.

98. Defendant Wheat identified in a written report eight specific messages between Plaintiff and adult women from Plaintiff's Instagram account.

99. Ms. Walker had not specified the use of Instagram by Plaintiff.

100. Defendant Wheat identified in a written report two specific messages between Plaintiff and adult women from the messaging application on Plaintiff's cellular phone.

101. Ms. Walker had not specified the use of a messaging application by Plaintiff.

102. Defendant Wheat also identified in a written report the general nature of conversations between Plaintiff and adult women from the application called "Whatsapp" on Plaintiff's cellular phone.

103. Defendant Wheat also identified in a written report what he referred to as "numerous images that are pornographic in nature" and "a video that is pornographic in nature."

104. On December 7, 2022, Defendant Wheat again searched Plaintiff's cellular telephone and identified seven additional Instagram chats, ten additional native messages, and one image with descriptions of private conversations.

105. The warrant to seize and search the cellular phone (Count 1) was invalid on its face and no reasonably trained or objective police officer would have relied on it to conduct a search of Plaintiff's cellular phone.

106. The searches of Plaintiff's cellular phone between May 2022 and December 2022 by Defendant Wheat was done without a valid warrant.

107. The seizure of Plaintiff's cellular phone data by Defendant Wheat was done without a valid exception to the warrant requirement.

108. The search and seizure of Plaintiff's cellular phone data by Defendant Wheat is presumed to be in violation of the Fourth Amendment to the United States Constitution.

109. On May 18, 2022, it was clearly established that a government actor could not search the contents of a cellular telephone provider without a valid warrant or an exception to the warrant requirement of the Fourth Amendment.

110. The conduct of Defendant Wheat was a direct and proximate cause of the constitutional violations between May 2022 and December 2022.

111. Plaintiff was damaged as a result of Defendant Wheat's unlawful conduct in that Plaintiff lost the protection of his personal privacy and the protection of the Fourth Amendment to the United States Constitution as well as anxiety, humiliation, excessive stress, worry, and a feeling of the loss of security of his property.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $25,000.00 against Defendant Wheat and Defendant Church, each.

## COUNT 5 – FOURTH AMENDMENT
(42 U.S.C. §1983 – unlawful search of Plaintiff's social media account)

112. Paragraphs 1 through 111 above are incorporated herein by reference.

113. On or about June 6, 2022, Defendant Wheat conducted a search of Plaintiff's social media records which had been unlawfully obtained (Count 3).

114. Defendant Wheat obtained 18,903 pages of records from Meta, Incorporated which all consisted of content from Plaintiff's Facebook social media account.

115. Defendant Wheat claimed in a written report that he had identified 18 images that he believed to be child sexually abuse material.

116. Defendant Wheat's entry into his written report contained five separate names of persons he claimed had been the senders of the images.

117. Defendant Wheat then turned these images over to another officer for entry into a government maintained data bank.

118. Defendant Wheat also documented in his written report a private conversation between Plaintiff and a named individual and an image purportedly sent by Plaintiff to a named individual.

119. Defendant Wheat did not identify how the images were associated with Plaintiff's social media account.

120. Defendant Wheat then displayed eight of the messages identified in ~~Paragraph 114~~ above to a pediatrician to view without obtaining consent from Plaintiff.

121. Defendant Wheat then obtained a written report from the pediatrician providing her opinion on the ages of the persons depicted in the images identified in ~~Paragraph 114~~ above.

122. On or about August 10, 2022 Defendant Wheat made an unauthorized disclosure to Children's Protective Services what he found on Plaintiff's social media account.

123. On September 16, 2022, Defendant Wheat then searched Plaintiff's Facebook records to identify by group name, Facebook identification number and names associated with numerous Facebook groups.

124. Defendant Wheat then documented in his written report Plaintiff's status regarding 23 Facebook groups including third party names that had participated in or joined those groups.

125. Defendant Wheat then documented in his written report additional information concerning a Facebook group including a third-party name and the content of the video associated with the message.

126. On October 11, 2022, Defendant Wheat sent the pediatrician an additional 20 images seeking an opinion from her.

127. On October 18, 2022, Defendant Wheat had the pediatrician review two additional videos including the names associated as purported senders.

128. On October 24, 2022, Defendant Wheat documented the date and third-party name of 111 Facebook messages or entries including the third-party names and content after again searching Plaintiff's social media account records.

129. The warrant to seize and search the social media records (Count 3) was invalid on its face and no reasonably trained or objective police officer would have relied on it to conduct a search of Plaintiff's social media account.

130. The search of Plaintiff's social media account from May through October of 2022 by Defendant Wheat was done without a valid warrant.

131. The seizure of Plaintiff's social media data by Defendant Wheat was done without a valid exception to the warrant requirement.

132. The search and seizure of Plaintiff's social media data by Defendant Wheat is presumed to be in violation of the Fourth Amendment to the United States Constitution.

133. On May 18, 2022, it was clearly established that a government actor could not search the contents of an electronic communications provider or service without a valid warrant or an exception to the warrant requirement of the Fourth Amendment.

134. The conduct of Defendant Wheat was a direct and proximate cause of the constitutional violations from May through October, 2022.

135. Plaintiff was damaged as a result of Defendant Wheat's unlawful conduct in that Plaintiff lost the protection of his personal privacy and the protection of the Fourth Amendment to the United States Constitution as well as anxiety, humiliation, excessive stress, worry, and a feeling of the loss of security of his property.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $25,000.00 against Defendant Wheat.

**RELIEF**

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

1. Enter judgment in the amount of not less than $125,000.00 against Defendant Wheat and

not less than $25,000.00 against Defendant Church;

2. Award Plaintiff his costs and attorney fees as authorized by 42 U.S.C §1988;

3. Award Plaintiff interest on the judgment to the date of the complaint as authorized by law;

4. Because the conduct of all individual Defendants was willful, malicious and intended to inflict humiliation, embarrassment and mental anxiety to Plaintiff, award exemplary damages to Plaintiff in an amount of not less than $50,000.00; and

5. Award Plaintiff any other relief as equity and justice demand.

Signature by Plaintiff:

_____                                    _____
Date                                                                              John Earl Haggard, Jr.


Signature by Attorney:

_____                                    _____
Date                                                                              Mary Beth Kur P44424
                                                                                         Attorney for Plaintiffs

## JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

_____                                    _____
Date                                                                              Mary Beth Kur  (P44424)
                                                                                         Attorney for Plaintiff
                                                                                         455 Bay Street, Suite B
                                                                                         Petoskey, MI 49770
                                                                                         231-348-3200

not less than $25,000.00 against Defendant Church;

2. Award Plaintiff his costs and attorney fees as authorized by 42 U.S.C §1988;

3. Award Plaintiff interest on the judgment to the date of the complaint as authorized by law;

4. Because the conduct of all individual Defendants was willful, malicious and intended to inflict humiliation, embarrassment and mental anxiety to Plaintiff, award exemplary damages to Plaintiff in an amount of not less than $50,000.00; and

5. Award Plaintiff any other relief as equity and justice demand.

Signature by Plaintiff:

2/14/25
Date

John Earl Haggard, Jr.

Subscribed & Sworn, To before me in Anchorage, AK on 2/14/25

Amber Brand

Signature by Attorney:

02/18/25
Date

Mary Beth Kur P44424
Attorney for Plaintiffs

### JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

02/18/25
Date

Mary Beth Kur (P44424)
Attorney for Plaintiff
455 Bay Street, Suite B
Petoskey, MI 49770
231-348-3200